## ANSLEY v. FEDERAL RADIO COMMISSION.

### No. 5149.

Court of Appeals of District of Columbia.
Argued Oct. 8, 1930.
Decided Dec. 1, 1930.

Petition for Rehearing Denied Jan. 10, 1931.

Bethuel M. Webster, Jr., of New York City, and Paul M. Segal, of Washington, D. C., for appellant.

Thad H. Brown and D. M. Patrick, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and WHEAT, Chief Justice of the Supreme Court of the District of Columbia.

MARTIN, Chief Justice.

An appeal from a decision of the Federal Radio Commission refusing an application of the appellant for a construction permit for the construction of a radio broadcasting station at the city of Abilene, Tex. The proposed station was to have a frequency of 550 kilocycles; power, 1,000 watts; hours of op-

eration, unlimited. The transmitter was to cost $25,000; the studio, $8,000; the towers, housing, and incidentals, $10,000. The proposed service of the station was to broadcast entertainment, and religious, commercial, educational, agricultural, fraternal, and miscellaneous messages.

At the date of the application the following stations were operating on 550 kilocycles: WGR, Buffalo, N. Y.; WKRC, Cincinnati, Ohio; KFUO and KSD, St. Louis, Mo.; KFDG, Brookings, S. D.; KFYR, Bismarck, N. D.; and KOAC, Corvallis, Or. At the same time a local broadcasting station, KFYO, was operating at Abilene on a frequency of 1,420 kilocycles, with a power output of 100 watts nighttime and 250 watts daytime. The licensee of the local station objected to the granting of appellant's application, upon the ground that there was no necessity for two broadcasting stations at Abilene, and not sufficient patronage to support two such stations. It was also stated by the owner of the local station that he had theretofore applied to the Radio Commission for an increase of power for his station, and that his application had been refused.

It appears from the evidence that the local station had signally failed to render efficient service to the people of Abilene and vicinity, and that much objectionable matter had been broadcast by it. It appears, on the other hand, that the appellant is an experienced broadcasting operator of good character, and that he might confidently be expected to conduct the new station, if established, in a satisfactory manner. The present controversy, however, is not a personal one, nor a competition between two broadcasting stations, but is to be governed solely by a consideration of the public interests. Section 4, Radio Act of 1927, 44 Stat. 1162, 1163 (47 USCA § 84).

The application of appellant was accordingly heard upon evidence by the Radio Commission, and on January 31, 1930, a decision was rendered by the Commission holding that the public interest, convenience, or necessity would not be served by granting the application, and denying the same, for reasons which, in substance, are as follows: (1) That the proposed station would result in the creation of additional serious heterodyne interference with stations already constructed and operating on the same frequency; (2) that the state of Texas already enjoyed more than a fair, equitable, or statutory share of available broadcasting facilities according to population; and (3) that neither the radio needs

nor the economic support of Abilene and vicinity justified the construction and operation of such a station as was applied for by appellant. From that order the present appeal was taken under the provisions of section 16 of the Radio Act of 1927, 44 Stat. 1162, 1169 (47 USCA § 96), which reads in part as follows:

"Sec. 16. Any applicant for a construction permit, for a station license, or modification of an existing station license whose application is refused by the licensing authority shall have the right to appeal from said decision to the Court of Appeals of the District of Columbia; * * * At the earliest convenient time the court shall hear, review, and determine the appeal upon said record and evidence, and may alter or revise the decision appealed from and enter such judgment as to it may seem just. The revision by the court shall be confined to the points set forth in the reasons of appeal."

It may be noted that the present appeal is not affected by "An Act To amend section 16 of the Radio Act of 1927," approved July 1, 1930 (47 USCA § 96), inasmuch as the appeal was perfected prior to the passage of the act.

In Federal Radio Commission v. General Electric Company, 281 U. S. 464, 50 S. Ct. 389, 390, 74 L. Ed. 969, Mr. Justice Van Devanter, when commenting upon the Radio Act of 1927 and the functions of this court under section 16, supra, said: "We think it plain from this resume of the pertinent parts of the act that the powers confided to the commission respecting the granting and renewal of station licenses are purely administrative, and that the provision for appeals to the Court of Appeals does no more than make that court a superior and revising agency in the same field."

█ The sole question before the Commission was whether the public interest, convenience, or necessity would be served by the granting of appellant's application. The question presented to this court by this appeal is whether the Commission's decision denying the application is manifestly against the evidence. Technical Radio Laboratory v. Federal Radio Commission, 59 App. D. C. 125, 36 F.(2d) 111, 66 A. L. R. 1355. Upon a consideration of the record we are of the opinion that the decision is not manifestly against the evidence.

█ The finding of the Commission that the operation of the proposed station would result in serious heterodyne interference with stations already constructed and operating upon a frequency of 550 kilocycles appears to be justified. The most reliable evidence upon the subject is the testimony of the Commission's engineer, who said that interference would be expected from the proposed station with station KSD, operating upon the same frequency at St. Louis approximately 690 miles distant from Abilene. It is true, as urged by appellant, that more or less heterodyne interference already occurs between other stations when broadcasting simultaneously upon this channel, and that such interference is likely to affect such broadcasting by regional stations, and that it is necessary to balance the amount and importance of the service a radio station may give against the degree of interference it may cause. General Electric Company v. Federal Radio Commission, 58 App. D. C. 386, 31 F.(2d) 630. Nevertheless the fact that serious heterodyne interference would occur between the proposed station with power of 1,000 watts and KSD at St. Louis with 500 watts power, from simultaneous broadcasting upon the same channel, raises a substantial objection to the granting of appellant's application.

By the Radio Act of 1927, 44 Stat. 1162 (47 USCA § 81 et seq.) Congress divided the United States into five zones, and placed the state of Texas in the third zone. By the Davis Amendment of March 28, 1928, 45 Stat. 373 (47 USCA § 89), Congress declared that the people of all the zones are entitled to equality of radio broadcasting service, both of transmission and reception, and that, in order to provide such equality, the licensing authority shall as nearly as possible make and maintain an equal allocation of broadcasting licenses, of bands of frequency or wave lengths, of periods of time for operation, and of station power, to each of the zones, and shall make a fair and equitable allocation of licenses, wave lengths, time for operation, and station power to each of the states within each zone, according to population, and that the licensing authority shall carry into effect such equality of broadcasting service whenever necessary or proper by granting or refusing licenses or renewals of licenses, by changing periods of time for operation, and by increasing or decreasing station power, when applications are made for licenses or renewals of licenses.

█ In passing upon appellant's application, the Commission has reported a finding that the state of Texas already enjoys more than its proper share, according to population, of

the broadcasting facilities of the third zone. This finding is sustained by a tabulation of "quota figures" adopted by the Commission and appended to the record. This finding of the Commission is presumed to be correct, and, while exact accuracy in such a computation is doubtless impossible, the finding is not refuted by the evidence.

The appellant, however, contends that in the allotment of broadcasting licenses the Commission has discriminated against the city of Abilene and a large area of Western Texas which is commercially tributary to it. It is contended that, owing to the physical conditions prevailing there, and because of the absence of efficient regional broadcasting stations, the people of an extensive territory are deprived of reasonable and satisfactory radio service.

The Commission has found against this contention, and this finding is not impeached by the evidence. It appears from the record that station WBAP at Fort Worth, Tex., 150 miles distant from Abilene, although now operating with a power output of only 5 kilowatts, is equipped with a 50-kilowatt transmitter; also that station WFAA at Dallas, 175 miles distant from Abilene, has been issued a construction permit to increase its power output to 50 kilowatts; and that station WOAI at San Antonio, distant 250 miles from Abilene, has been issued a similar authorization. These stations now are or soon will be operating with such increased power. It appears furthermore that the communities in whose behalf appellant is contending are with few exceptions as near to these powerful stations as is Abilene.

It is generally accepted that a 50,000-watt broadcasting station will deliver good service within a radius of 300 miles, and fair service within a much greater radius, and, while it is true that the peculiar physical conditions of Western Texas may require a modification of these figures, it may be concluded nevertheless that the 50,000-watt stations at Dallas, Fort Worth, and San Antonio, are or soon will be able to deliver good service to the entire area in question. It may be assumed that such service will include market and weather reports, and other broadcasting desired by the people of Western Texas, and that this service, together with such as may be added by the local Abilene station, will render the construction of a regional station at Abilene unnecessary.

The record sets out many exceptions taken by appellant to procedural rulings of the Commission at its hearing upon the application. It seems unnecessary to discuss these, for they do not affect the substantial issues in the case.

The decision of the Commission is affirmed, with costs.