## In re NEW ENGLAND HIGH CARBON WIRE CORP., Debtor.

## NEW ENGLAND HIGH CARBON WIRE CORP. and Sumner B. Tilton, Jr., Trustee, Plaintiffs,

v.

## TOWN OF MILLBURY, MASSACHUSETTS, By and Through its COLLECTOR OF TAXES, Mildred V. Kunsinger, Defendants.

### Bankruptcy No. 78–0337–G.

United States Bankruptcy Court, D. Massachusetts.

May 21, 1984.

James M. Burgoyne, Fletcher, Tilton & Whipple, Worcester, Mass., for plaintiffs.

Edward P. Healy, Healy, Desimone, Rocheleau & Horton, Worcester, Mass., for defendants.

## MEMORANDUM AND ORDER ON COMPLAINT FOR DECLARATORY RELIEF AND OBJECTION TO PROOF OF CLAIM OF THE TOWN OF MILLBURY

PAUL W. GLENNON, Bankruptcy Judge.

The two questions before the Court are:

1. Whether this Court has jurisdiction to hear and determine the amount of pre-confirmation taxes due and owing the Town of Millbury where the debtor has not exhausted the administrative remedies for appealing tax assessments under the General Laws of Massachusetts, M.G.L. ch. 59, § 59, which remedies are a prerequisite to judicial challenge of assessed taxes outside of bankruptcy; and

2. Whether this Court has jurisdiction to hear and determine the amount of taxes levied post-confirmation.

## FACTS

The Chapter XI petition of New England High Carbon Wire Corporation ("NEWCO") was filed on February 24, 1978. A plan of arrangement was confirmed on May 21, 1980. Pursuant to said plan, Sumner B. Tilton, Jr. was named trustee ("Trustee") under a trust mortgage executed on January 22, 1980 by NEWCO for the benefit of its unsecured creditors.

A priority proof of claim in the amount of $226,722.26 was timely filed by the Town of Millbury ("Town") for taxes, plus interest, owing for the fiscal years ended in 1978, 1979 and 1980, pursuant to § 64 of the Bankruptcy Act. The proof of claim was later amended by excluding post-petition interest, and now stands in the amount of $205,929.60. NEWCO objected to the proof of claim. The grounds for the objection were that "[t]he assessed value of the property does not bear the same relationship to its fair cash value as does the assessed value of other comparable property in Millbury." [1] No hearing was held on the objection at the request of NEWCO. NEWCO and the Trustee also filed a complaint for declaratory judgment and other relief against the Town by and through its Collector of Taxes, Mildred V. Kunsinger. By way of this complaint, NEWCO and the Trustee (collectively "plaintiffs") seek to have this Court determine the proper value of the real estate owned by NEWCO for assessment purposes for the fiscal years ended in 1978, 1979 and 1980. Approximately $200,000 is being held in escrow pending the Court's decision on the matter of the correct amount of taxes due and owing the Town. Furthermore, the plaintiffs request that if the Town's assessments are determined to be incorrect, that the Court enter an order requiring that the

---

1. The other ground for objecting to the claim was based on the inclusion of post-petition interest and as a result of the above-mentioned amendment, has now become moot.

Town adjust its assessment. The plaintiffs also request a reduction in the 1981 tax bill.[2] The plaintiffs also requested that the trial of their complaint be consolidated with the hearing on the objection of NEWCO to the proof of claim filed by the Town.

■ At the pretrial conference, counsel for the Town made clear that it was contesting the jurisdiction of this Court only as respects the 1981 tax bill.[3] Furthermore, one of the affirmative defenses raised in the Town's answer reads: The Bankruptcy Court "lacks jurisdiction over the subject matter as to the reasonableness and validity of any assessment relating to the real estate tax bill covering the subject property for that [sic] fiscal year ending in 1981". At the start of the pretrial conference, with the assent of NEWCO, the Court granted the Town's request to amend its answer by adding three additional affirmative defenses, none of which raised the lack of jurisdiction of this Court to assess taxes for fiscal years 1978, 1979 and 1980. It was not until the trial, some four months later, that the Town first made the Court and the plaintiffs aware that it contested subject matter jurisdiction for fiscal years 1978, 1979 and 1980. However, since lack of subject matter jurisdiction may never be waived, see, e.g., American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951) and Williams v. Rogers, 449 F.2d 513 (8th Cir. 1971), cert. denied, 405 U.S. 926, 92 S.Ct. 976, 30 L.Ed.2d 799 (1972), and upon failure of opposing counsel to object, pleadings

may be treated as amended to conform to the evidence, see, e.g., In re Santa Fe Downs, Inc., 611 F.2d 815 (10th Cir.1980) and B.R. 7015 incorporating F.R.C.P. 15(b), the Court is addressing the question of subject matter jurisdiction for the years 1978, 1979, 1980, and 1981.

■ The Town basically argues that the plaintiffs must, prior to filing a suit contesting valuation and assessment of real estate taxes, apply to the local Board of Assessors for an abatement. The Town does not contest the Court's jurisdiction under 2a(2A) of the Bankruptcy Act to hear and determine the same once the administrative remedy, set for the above, has been exhausted.

## DISCUSSION

The Court is convinced it has the requisite subject matter jurisdiction to hear and determine the questions presented. Jurisdiction is founded in § 2a(2A) of the Bankruptcy Act (11 U.S.C. § 11(a)(2A).[4] Section 2a(2A) of the Bankruptcy Act provides courts of bankruptcy with jurisdiction to:

> "Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction...."

---

**2.** The 1981 tax bill was paid, with interest, on November 16, 1981, the reason being that pursuant to the confirmed plan, Precision Industries, Inc. ("Precision") was to manage NEWCO for a period up to three years with the option to purchase the outstanding capital stock of NEWCO and consummate a plan of arrangement with the unsecured creditors. When Precision defaulted under the trust mortgage by failing to exercise the above-mentioned option to purchase, the Trustee foreclosed upon the real estate. At the time of foreclosure, there was outstanding the 1981 fiscal year real estate tax bill owing by NEWCO in the amount of $86,590.15. These taxes were assessed as of January 1, 1980. It was necessary for NEWCO to pay the 1981 tax bill to facilitate the sale of the real estate. On November 16, 1981, the tax bill, plus interest, in the total amount of $95,840.66 was paid.

**3.** "There isn't any dispute about your jurisdiction in '78, '79 and 1980 ... but we do dispute 1981." Transcript of April 30, 1982 Hearing, at 7.

**4.** Section 403 of Pub.L. 95–598, Title IV, Nov. 6, 1978, 92 Stat. 2683 provides: "(a) A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of parties in connection with any such bankruptcy case, matter or proceeding shall continue to be governed by the law applicable to such case, matter or proceeding as if the Act had not been enacted."

This section was added to the other jurisdictional provisions of § 2a in 1966. Simultaneously § 64(a)(4) (11 U.S.C. § 104a(4)) was amended by the deletion of the following: "in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court." Section § 64 contained provisions governing priority claims and expenses relating to the administration of a bankruptcy estate. It is clear, therefore, that by this change, the intent of Congress was that courts of bankruptcy be endowed with jurisdiction to hear and determine questions relating to unpaid taxes when these questions were not contested pre-filing.

Specific policy reasons exist in support of this jurisdictional grant. Once a petition is filed, creditors became interested in ensuring that a debtor pays only that amount of taxes which is truly due and owing so that the maximum amount of money is available for distribution to creditors. Conversely, a debtor may have no real interest in contesting a tax assessment once a petition is filed and will therefore allow the time for contesting an assessment to run. Since creditors obtain this interest, they should have the effective right to contest a tax assessment they believe to be high. *See In re Century Vault Co.*, 416 F.2d 1035 (3d Cir. 1969); *City of Amarillo v. Eakens*, 399 F.2d 541 (5th Cir.1968), *cert. denied*, 393 U.S. 1051, 89 S.Ct. 688, 21 L.Ed.2d 692 (1969); *In re Universal Minerals, Inc.*, 25 B.R. 799 (Bkrtcy.W.D.Pa.1982); *In re Tapp*, 16 B.R. 315 (Bkrtcy.D.Alaska 1981); *In re Continental Credit Corp.*, 1 B.R. 680 (Bkrtcy.W.D.Ill.1979); *In re Seaver-Howland Press, Inc.*, 16 Am.B.R. 227 (D.Mass.1930); and *In re E.C. Fisher Corp.*, 229 F. 316 (D.Mass.1915).

M.G.L. ch. 59, § 59 requires anyone who seeks an abatement of real state taxes to file an application for abatement within thirty days after the date on which the tax bill was mailed.[5] This is a necessary pre-

requisite to a judicial challenge under Massachusetts law. As stated by Judge Lavien in *In re Fernandes Super Markets, Inc.*, No. 78–1713–HL slip op. at 4 (Sept. 25, 1979): "[a]lthough this court recognizes the sound policy considerations underlying the application of [the doctrine of exhaustion of administrative remedies prior to judicial determination of a controversy] in appropriate circumstances, this court is neither bound by that doctrine nor does it consider the doctrine's application appropriate in this case." *See also* 1 Collier on Bankruptcy ¶ 2.22A at 220 (14th ed. 1967) ("[w]here the time has run against the bankrupt for contesting the claim.... it is clear that the bankruptcy court may hear and determine the matter ...") and cases cited therein.

■ The only circumstances under which a bankruptcy court may not hear and determine the proper tax due and owing by a debtor is when the tax has been paid or the amount or legality of the tax has been contested by a judicial or administrative tribunal. In furtherance of the policy behind § 2a(2A), "contested" has been strictly interpreted, *see, e.g., In re Tapp, supra*, and cases cited therein, and requires a full hearing.

Although some cases appear to question the bankruptcy court's jurisdiction to hear and determine the matter of taxes owing where adequate state procedures exist, *see, e.g., Quinn v. Aero Services, Inc.*, 172 F.2d 157 (9th Cir.), *cert. denied*, 338 U.S. 816, 70 S.Ct. 55, 94 L.Ed. 494 (1949) and *Commonwealth v. Aylward*, 154 F.2d 714 (8th Cir. 1946), this court finds them unpersuasive as did Judge Lavien in the case cited above. In any event, these cases were decided prior to the statutory changes recited above, which changes evidence the clear intent of Congress.[6]

---

5. That section reads:
"A person upon whom a tax has been assessed ... if aggrieved by such tax, may, ... on or before October first of the year to which the tax relates ... apply in writing to the assessors ... for an abatement thereof ...."

6. Judge Lavien, citing *inter alia Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), found additional support for jurisdiction due to the submission by the creditor of a proof of claim.

The Court believes it has this jurisdiction even when the time for employing state procedures has expired. As stated in *In re Sever-Howland Press, Inc., supra,* "[t]he right of the bankruptcy court to determine the amount and legality of all taxes cannot be thwarted or limited in anyway by local statutes ... denying to taxpayers all remedies for abatement and recovery of taxes improperly assessed unless such requirements are complied with .... [A] bankruptcy court is not precluded from reducing a tax although the bankrupt would be so precluded apart from bankruptcy law." *Id.* at 232 and 233. *See also In re Continental Credit Corp. supra,* at 684 ("bankruptcy court has jurisdiction to redetermine the amount of taxes otherwise legally due and owing, even where, under state law, remedies were available for contesting the tax, which the bankrupt failed to pursue"). *Cf. Arkansas Corporation Commission v. Thompson,* 313 U.S. 132, 61 S.Ct. 888, 85 L.Ed. 1244 (1941) (state agency conducted hearing at which trustee participated; bankruptcy court could not conduct additional hearing).

Accordingly, the Court holds it has jurisdiction to hear and determine the question of taxes due for the years 1978, 1979 and 1980. As to the 1981 tax bill, under M.G.L. ch. 59, § 11,[7] liability for payment of taxes arises on January 1 of the year prior to the budget year which commences July 1. Therefore, the liability to pay the 1981 tax bill arose on January 1, 1980. Despite this, the taxpayer would have no idea as to the amount of taxes due until the bill was received, in this case, sometime after confirmation. Additionally, the Town has failed to supply the Court with any authority in support of its position that the 1981 tax bill should be accorded treatment different from the three prior years. Accordingly, I decline to so do this.

---

**7.** That section provides, in relevant part: "[t]axes on real estate shall be assessed. ... to the person who is the owner on January first ...."